UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PAYPAL HOLDINGS, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 17-cv-00162-RS<br><br>(CONSOLIDATED WITH NOS. 3:17-CV-02206-RS; 3:17-CV-02428-RS; AND 5:17-CV-02446-RS)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

In this shareholder derivative action, nominal defendant Paypal Holdings, Inc. ("Paypal") moves to dismiss plaintiffs' operative complaint for failure to plead particularized facts demonstrating that a pre-suit demand on Paypal's Board of Directors would have been futile. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety, with leave to amend.

## II. BACKGROUND[1]

Nominal defendant Paypal is a publicly traded company that offers technology platforms allowing consumers and merchants to make digital and mobile payments. In December 2013, eBay, Inc., the then parent company of Paypal, bought a startup company called Braintree, best

---

[1] The factual background is based on the averments in the operative complaint, *Liss v. Schulman*, Case No. 17-cv-02446-RS, Dkt. No. 1, which must be taken as true for purposes of this motion.

known for its acquisition of another startup called Venmo, creator of a smartphone application facilitating money transfers between users. eBay operated Braintree as a separate service within Paypal until 2015, when Paypal was spun off into a separate publicly traded company.

According to plaintiffs, unbeknownst to the public, Venmo was engaging in unfair and deceptive trade practices, which came to light on March 28, 2016, when Paypal received a civil investigative demand ("CID") from the Federal Trade Commission ("FTC"). The CID was part of an ongoing investigation into whether Paypal, through its Venmo service, had been engaging in deceptive or unfair practices in violation of the Federal Trade Commission Act ("FTCA"). Plaintiffs allege that defendants issued or caused to be issued various public disclosure documents that failed to disclose the nature of these illegal business practices. Plaintiffs contend that Venmo's unlawful conduct artificially inflated Paypal's financial results, as evidenced by the fact that news of the FTC investigation caused Paypal's market capitalization to fall by $1 billion. On May 20, 2016, the Texas Attorney General announced a settlement with Paypal relating to Venmo's business practices, which included using customers' phone contacts without clearly disclosing how such contacts would be used. This news resulted in Paypal's market capitalization falling by another $145 million.

After receiving the CID but before publicly disclosing it, defendants Casares, Christodoro, Donahoe, Dorman, McGovern, Moffett, Omidyar, Schulman, and Yeary, Paypal Board members, issued a proxy statement to the company's shareholders in which each sought reelection to the Board. Plaintiffs allege that this proxy statement was misleading because it failed to mention the CID or Venmo's illegal practices but rather touted Paypal's strong corporate governance and the Board members' monitoring of the company. In addition, plaintiffs contend that defendant Donahoe, Paypal's Board Chairman, was privy to material nonpublic information about Paypal's "true business health" and took advantage of the company's inflated stock price to sell over 1.8 million shares of his personally held Paypal stock for proceeds of over $70 million.

Defendant Daniel Shulman is Paypal's president, Chief Executive Officer, and has been a director since July 2015. Defendant John Rainey is Paypal's Senior Vice President and Chief

Financial Officer and has been since August 2015. Defendant John Donahoe, as noted above, is Paypal's Chairman of the Board and has been a director since July 2015. Defendant Patrick Dupuis served as Paypal's Senior Vice President and Interim CFO from July 2015 to August 2015. He was also Paypal's CFO from November 2010 to July 2015. Defendants David Moffett, Pierre Omidyar, Gail McGovern, Frank Yeary, David Dorman, Jonathan Christodoro, and Wences Casares are non-officer directors.

Plaintiffs did not make a pre-suit demand on the Board and assert that demand would have been futile because a majority of the Board faces a substantial likelihood of liability on plaintiffs' claims. Nominal defendant Paypal contends that demand is not excused with respect to any of plaintiffs' claims and seeks to dismiss the operative complaint in its entirety.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the

ORDER GRANTING MOTION TO DISMISS
CASE NO. 17-cv-00162-RS
3

nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted).

A basic principal of corporate law is that a corporation is run by its management and the corporation itself has the right to make claims. *See Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008). Because a shareholder derivative suit is an extraordinary action that allows a shareholder to step into the shoes of a corporation and make claims on behalf of the corporation, Federal Rule of Civil Procedure 23.1 "establishes stringent conditions for bringing such a suit." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010). Specifically, Rule 23.1 requires a shareholder either to demand action from the corporation's directors before filing suit, or plead with factual particularity the reasons why such a demand would have been futile. Fed. R. Civ. P. 23.1(b)(1).

## IV. DISCUSSION

Because Paypal is incorporated in Delaware, that state's law governs whether plaintiffs' failure to make a pre-suit demand on the Board can be excused as futile. *See La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016). Two tests govern whether demand would have been futile, only one of which is relevant here.[2] The *Rales* test applies to claims that— like those asserted in the complaint—do not challenge a conscious business decision, but instead challenge board inaction, such as failure to oversee the company's affairs, or to prevent disclosure violations or insider trading. *See In re Polycom Litig.*, 78 F. Supp. 3d 1006, 1013 (N.D. Cal. 2015) ("Plaintiffs' oversight and false and misleading statement claims are governed by the *Rales* test.").

---

[2] Under the *Aronson* test, to show demand futility, a plaintiff must provide factual allegations that raise a reasonable doubt that "(1) the directors were disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *See Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000), quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Where there is no transaction being challenged, the ordinary *Aronson* analysis does not apply. *See Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).

ORDER GRANTING MOTION TO DISMISS
CASE NO. 17-cv-00162-RS

4

To satisfy the *Rales* test, a plaintiff must plead "particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930. Because the complaint does not challenge the independence of any member of the Board, the relevant inquiry is whether plaintiffs have alleged sufficiently that a majority of the directors are "interested" because they face a "substantial likelihood of liability." *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999).

Under Paypal's certificate of incorporation, authorized by Section 102(b)(7) of Delaware General Corporation Law, Paypal limits director liability for breaches of fiduciary duty "[t]o the fullest extent permitted by law." (Paypal's Request for Judicial Notice, Ex. F, Dkt. No. 28-6).[3] Accordingly, "a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim," which requires plaintiffs to allege particularized facts showing that the directors engaged in "disloyal," "fraudulent, illegal or bad faith conduct," and "acted with scienter." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). Negligent or even reckless conduct is insufficient. *See McPadden v. Sidhu*, 964 A.2d 1262, 1274-75 (Del. Ch. 2008).

**A. The Section 14(a) Claim**

Plaintiffs allege that defendants Casares, Christodoro, Donahoe, Dorman, McGovern, Moffett, Omidyar, Schulman, and Yeary violated Section 14(a) of the Exchange Act by disseminating a proxy statement to shareholders on April 14, 2016, that contained false and misleading statements. Because this conduct implicates a majority of the Board, plaintiffs assert that demand is excused.

Section 14(a) makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy" in contravention of SEC rules and regulations. 15 U.S.C. § 78n(a). SEC Rule 14a-9 provides that no proxy solicitation shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is [materially] false or misleading[,] . . .

---

[3] Paypal requests judicial notice of its restated certificate of incorporation; notice will be taken of the existence of this document, but its contents will not be taken as true.

or which omits to state any material fact necessary" to render "the statements . . . not false or misleading." 17 C.F.R. § 240.14a-0(a). "[A] Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Where, as here, the claim "sounds in fraud," both Federal Rule of Civil Procedure 9(b) and the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA") apply, and the plaintiff must "identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Id.*; *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1076 (C.D. Cal. 2008).[4]

In the proxy, defendants solicited shareholder votes for reelection to the Board, claiming a commitment by Paypal and its Board to "strong" and "good" "corporate governance." Compl. ¶¶ 71-72. Plaintiffs argue that these statements were misleading because they did not mention Venmo's allegedly illegal business practices. Paypal argues persuasively that Venmo's alleged unlawful conduct is properly characterized as "uncharged" and "unadjudicated" because the CID merely announced the existence of an FTC investigation, which is still ongoing.[5] Federal securities laws do not impose upon companies a "duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen & Firemen Retirement Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also In re Teledyne Defense Contracting Deriv. Litig.*, 849 F. Supp. 1369, 1382 (C.D.

---

[4] In the operative complaint, plaintiffs disclaim allegations of reckless or knowing conduct, apparently to avoid having to comply with the heightened pleading requirements regarding fraud. It is, however, difficult to read the complaint as plaintiffs desire, both because plaintiffs allege that the defendants involved "*should have been aware* of the deficiencies in their corporate governance at the time of the Proxy," Compl. ¶ 71 (emphasis added), and because, as explained above, plaintiffs must allege scienter to support their position that demand on the Board would have been futile.

[5] Paypal also denies that its settlement with the Texas AG in May 2016 constituted an "adjudication" because Paypal did not admit wrongdoing. A determination on that point is unnecessary, as the challenged proxy statement was issued before the announcement of the settlement.

Cal. 1993) (dismissing a Section 14(a) claim because directors need not disclose alleged wrongdoing "when such charges have not yet been brought, let alone proven"). Accordingly, the remaining inquiry is whether defendants' failure to disclose in their proxy materials the company's receipt of the CID is actionable.

According to plaintiffs, defendants knew or should have known that the proxy statements were misleading, because at the time the proxy was issued, Paypal had already received notice of the FTC's investigation into Venmo's business practices. As members of the Board's Audit, Risk and Compliance Committee, defendants Moffett, McGovern, and Yeary were, plaintiffs assert, especially likely to have known about the alleged misrepresentation, because they were responsible for ensuring the accuracy of Paypal's financial statements. *See In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016-16 (N.D. Cal. 2007) (finding duties to know information based on audit committee or compensation committee membership sufficient to show the defendants knew wrongdoing was occurring or were negligent in not knowing). Plaintiffs argue that the issuance of the allegedly false and misleading proxy was an essential link to stockholders reelecting defendants to the Board. Had shareholders known that the company had received a CID, plaintiffs contend, the directors would not have been reelected and the illegal scheme, which they allegedly presided over and subsequently failed to disclose, would not have persisted.

Courts in this district, and in other circuits, have held that a Section 14(a) claim requires that the votes solicited by a false proxy statement directly authorize the loss-generating corporate action. *See Kelley v. Rambus, Inc.*, 2008 WL 5170598 at *7 (N.D. Cal. Dec. 9, 2008). A complaint alleging generally that the mere election of directors was an essential link to the directors' subsequent wrongdoing does not satisfy Section 14(a)'s requirements. *See In re Diamond Foods, Inc. Deriv. Litig.*, 2012 WL 1945814 at * 7 (N.D. Cal. May 29, 2012); *In re HP Deriv. Litig.*, 2012 WL 4468423 at *11 (N.D. Cal. Sept. 25, 2012); *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007); *Gen. Elec. Co. v. Cathcart*, 980 F. 2d 927, 933 (3d Cir. 1992); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F. 3d 783, 797 (11th Cir. 2010).

Plaintiffs argue that allegations of this nature have been repeatedly held to satisfy the "essential link" requirement.[6] This case is, however, distinguishable from the majority of authorities that plaintiffs rely upon, each of which involved directors accused of backdating stock options. In those cases, because the proxies facilitated the election of directors and approval of stock option plans, they formed the essential link to the Board's continued diversion of company assets to its members. In the only cited case not involving stock option backdating, *In Re Wells Fargo & Co. S'holder Deriv. Litig.*, 2017 WL 4414304 at *17, 19 & n.11 (N.D. Cal. Oct. 4, 2017), the district court held that in contrast to *In re Diamond Foods, Inc. Deriv. Litig.*, the omitted material information went well beyond simple mismanagement. There, the challenged proxies solicited shareholder approval for executive compensation packages supposedly justified by record cross-sell and deposit levels. Because the proxy statements concealed the fact that the cross-sell figures were inflated by the company's fraudulent practices, the court found that plaintiffs had alleged the proxy caused shareholders to approve a loss-causing transaction. Here, whether plaintiffs have adequately pleaded the loss causation element is less clear. The Section 14(a) claim is premised on a single proxy, which apparently only solicited votes for the reelection of several directors. That those individuals remained on the Board and subsequently presided over Venmo's allegedly deceptive practices is thus insufficient to satisfy the "essential link" requirement.

The complaint also fails to identify actionable statements in the proxy under the heightened pleading standards of the PSLRA. For a statement to be false or misleading, it "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). In other words, "it is not enough to allege that [a] statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement affirmatively led the plaintiff in the wrong

---

[6] *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 2017 WL 4414304 at *17, 19 & n.11 (N.D. Cal. Oct. 4, 2017), *In re Fossil, Inc. Deriv. Litig.*, 713 F. Supp. 2d 644, 655 (N.D. Tex. 2010); *In re Maxim Integrated Prods. Deriv. Litig.*, 574 F. Supp. 2d 1046, 1066 (N.D. Cal. 2008); *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007).

direction (rather than merely omitted to discuss certain matters)." *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013). Plaintiffs allege that in the proxy, defendants "highlighted their supposed successful oversight of the Company," "described their responsibilities, the duties of each committee, their active role in risk management, and touted PayPal and the board's 'strong governance standards' in multiple places." Compl. ¶ 70. According to plaintiffs, the existence of Venmo's unfair trade practices rendered the proxy's claims about strong corporate governance misleading. On the contrary, the statements identified by plaintiffs are too general to give rise to any particular impression about Venmo's business practices and their legality, and therefore are not actionable as a matter of law. *See, e.g., In re Braskam S.A. Sec. Litig.*, 2017 WL 1216592 at *13 (S.D.N.Y. Mar. 30, 2017) (noting that statements touting company's "commitment to transparency and good corporate governance practices," "trustworthy culture," "commitment to integrity," and "compliance with the laws," were the type of statements that courts around the country "have consistently held to be inactionable"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1073 (C.D. Cal. 2012) (holding that a statement regarding company's commitment to "maintaining best practices" was inactionable); *Retail Wholesale & Dept. Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (holding that aspirational statements "to commit to certain 'shared values'" and conduct were not actionable).

In short, plaintiffs fail to identify a basis for inferring that defendants' omission in the proxy materials of information regarding the FTC investigation caused Paypal's shareholders to be misled, and formed an "essential link" to a loss-causing transaction. Because there is no indication that a majority of Paypal's Board faced a substantial likelihood of liability on the Section 14(a) claim at the time the complaint was filed, demand is not excused with respect to that claim.

**B. The Breach of Fiduciary Duty Claim**

Plaintiffs' breach of fiduciary duty claim appears to be premised on three different theories: 1) defendants made or caused to be made allegedly false and misleading statements in Paypal's SEC filings, 2) defendants neglected their duty to monitor and prevent Paypal's/Vemo's

unlawful conduct, and 3) defendant Donahue exploited his insider knowledge of Paypal's true financial condition for personal gain before Venmo's allegedly illegal business practices became public. Paypal argues that demand is not excused with respect to any of these theories because plaintiffs fail to plead facts demonstrating that defendants face a substantial likelihood of liability.

Plaintiffs argue that various defendants issued and/or caused Paypal to issue numerous false and misleading statements that failed to disclose the existence of Venmo's illegal business practices, which were allegedly responsible for the company's inflated financials. According to plaintiffs, defendants caused Paypal to discuss in its Q2 and Q3-2015 quarterly reports and annual report for FY 2015, laws applicable to Paypal and Venmo and the consequences of violations, without disclosing that Venmo was in fact committing violations.[7] Plaintiffs contend that the importance to Paypal of Venmo's compliance with all laws and regulations warrants a reasonable inference, at the pleading stage, that defendants were aware of, or consciously turned a blind eye to, Venmo's illegal business practices. On the contrary, a derivative complaint may not rely on broad group allegations or presume a director's knowledge of wrongdoing based on his or her status as a director. *See South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012) ("As numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1.").

Plaintiffs argue that group allegations are appropriate when a group of directors is privy to the same information and fails to act, *see, e.g., Shaev v. Baker*, 2017 WL 1735573 at *10 n.8 (N.D. Cal. May 4, 2017) ("Because Plaintiffs allege that the Board as a whole or specific committees within the Board had knowledge of the [wrongdoing], the Court does not evaluate demand futility on a director-by-director basis."). Yet the complaint is devoid of any particularized

---

[7] The operative complaint details a number of other statements purportedly authorized by several individual defendants when Paypal was still a subsidiary of eBay. Because those disclosures took place before Paypal was spun off, and thus before plaintiffs became shareholders of Paypal, plaintiffs do not have standing to challenge those statements.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 17-cv-00162-RS
10

allegations regarding whether, prior to issuing the challenged statements, defendants received information that would have put them on notice that the statements were misleading.[8] Instead, plaintiffs allege (1) that the directors as a group likely were aware of Venmo's alleged violations because they were charged with overseeing Venmo, (2) that defendants Donahoe, Moffett, and Omidyar likely had knowledge because they conducted due diligence in connection with eBay's purchase of Braintree/Venmo, and (3) that defendant members of the Board's Audit, Risk and Compliance committee face a high likelihood of liability because they were responsible for compliance, and reviewed and approved the challenged statements. These allegations contain no indication that any of the defendants knew specific facts regarding wrongdoing by Venmo, or were personally involved in illegal conduct beyond a general responsibility to monitor Paypal's and Venmo's compliance with applicable laws and regulations.[9]

"Without any particularized allegations explaining what the Directors knew, when they knew it, or anything more than 'general allegation[s] that the Board participated' in making or causing false or misleading statements to be made, the Court cannot infer that the board acted in bad faith, knowingly, or with intent to deceive." *In re Polycom*, 78 F. Supp. 3d at 1017 (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999), *abrogated on other grounds as stated in South Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)); *see also In re Maxwell Techs. Deriv. Litig.*, 2014 WL 2212155 at *12 (S.D. Cal. May 27, 2014) ("Allegations that financial statements contained false statements and material omissions, and that the director defendants reviewed the statements pursuant to the responsibilities are insufficient to allow a court to conclude that there is a substantial likelihood of liability."). Therefore, because plaintiffs do not

---

[8] Crucially, Paypal did not receive notice from the FTC that Venmo was under investigation until March 28, 2016, *after* the issuance of the challenged disclosures.

[9] Relying on *Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010) and *Barovic v. Ballmer*, 72 F. Supp. 3d 1210 (W.D. Wash. 2014), plaintiffs argue that defendants' knowledge of Venmo's alleged wrongdoing can be presumed under the "core operations" doctrine. This doctrine is inapplicable because plaintiffs have not shown, and indeed are unlikely to show, that Venmo's handling of customer information was a "core operation" of *Paypal* such that *Paypal's directors* can be charged with knowledge about those practices.

provide a basis to assume that defendants knew about Venmo's alleged wrongdoings at the time the challenged statements were issued, they cannot show that a majority of the Board faced a substantial likelihood of liability.

As part of their second claim for relief, plaintiffs also allege that defendants breached their fiduciary duties "by creating a culture of lawlessness within Paypal, and/or consciously failing to prevent" Venmo from engaging in "unlawful" practices. Compl. ¶ 106. This allegation may be construed as an oversight claim, under which shareholders seek to hold directors liable for harm caused to the corporation for failing to be "active monitors" of the corporation's affairs. *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To establish a "substantial likelihood of liability" based on a *Caremark* theory, a plaintiff must allege particularized facts showing that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id.* Plaintiffs do not allege a complete absence of reporting or information systems, nor do they plead particularized facts showing that defendants ignored "red flags" or internal controls in conscious disregard of their duty to monitor. Accordingly, plaintiffs fail to allege that any defendant faces a substantial likelihood of liability under a *Caremark* theory.

Finally, plaintiffs allege a claim for breach of fiduciary duty based on defendant Donahoe's execution of trades on material non-public information. Plaintiffs have not, however, pleaded particularized facts indicating that a majority of the Board would lack disinterestness or independence in making a decision on a demand as to that claim. As such, demand is not excused based on the insider trading claim. *See, e.g., In re China Auto. Sys. Inc. Deriv. Litig.*, 2013 WL 4672059 at *10 (Del. Ch. Aug. 13, 2013); *In re Hecla Min Co. Deriv. S'holder Litig.*, 2014 WL 689036 at *15 (D. Idaho Feb. 20, 2014). Even with respect to Donahoe's liability, plaintiffs do not allege specific facts as to what material non-public information Donahoe possessed, or how he

obtained it. Instead, plaintiffs rely upon conclusory statements about "suspicious" sales based on knowledge derived from being a member of Paypal's board—allegations that are insufficient to establish a substantial likelihood of liability as to Donahoe.

### C. The Waste and Unjust Enrichment Claims

Plaintiffs' claims for corporate waste and unjust enrichment are premised on the breaches of fiduciary duty alleged in their second claim for relief. Because plaintiffs have failed to plead that a majority of Paypal's directors face a substantial likelihood of liability for breach of fiduciary duty, they have also failed to plead that a majority of directors face a substantial likelihood of liability for waste and unjust enrichment.[10]

## V. CONCLUSION

For the reasons explained above, plaintiffs fail to plead facts indicating that a majority of Paypal's Board faced a substantial likelihood of liability on any of their claims at the time the complaint was filed. Accordingly, demand is not excused and all of the claims are dismissed, with leave to amend. If plaintiffs elect to amend the complaint, they must do so within thirty days of the date of this order.

**IT IS SO ORDERED**.

Dated: January 18, 2018

RICHARD SEEBORG
United States District Judge

---

[10] *See, e.g., In re China Auto*, 2013 WL 4672059 at *10 (demand not excused as to unjust enrichment claim that was premised on breach of fiduciary duty claims because plaintiffs failed to establish demand futility as to the fiduciary duty claims); *In re JP Morgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 at *1 n.2 (S.D.N.Y. Mar. 31, 2014) (demand not excused as to waste and unjust enrichment claims that were premised on breach of fiduciary duty claims because plaintiffs failed to establish demand futility as to the fiduciary duty claims).